*C. F. Watts, City Soltcitor,* for defendant.

---

(Hamilton County Court of Common Pleas.)

THE STATE OF OHIO EX REL. EBERHARDT *v.* THE CITY OF CINCINNATI and The Board of Administration of said City.

1. Bids for street improvements before the Board of Administration of Cincinnati.
2. The only mandatory duty which is upon the board is that of awarding the contract to to the lowest responsible bidder.
3. No one is a bidder who has not complied with all the reasonable requirements as to the manner and mode of bidding.
4. Whether the board might legally award a contract to an irregular bidder. *Quære:*

(Decided April, 1895.)

---

In Mandamus.

WRIGHT, J.

On January 2, 1895, the Board of Administration of the city of Cincinnati passed a resolution for the improvement of a certain portion of one of the city streets, and in accordance with the law advertised for sealed proposals for the doing of the work contemplated. The relator was one of the bidders upon the work; his bid was presented within the time prescribed by the advertisement, was duly opened and considered by the board was rejected, and the contract awarded to another of the bidders. His claim is that he was the lowest responsible bidder, and is entitled to the contract.

Amongst other things, the testimony developed the following facts. The advertisement for proposals contained the following provisions: "Bidders to use the printed forms, as none other will be received." The printed forms referred to by the advertisement were supplied by the board to any one who proposed to bid, and each printed form contained instructions to bidders as to the requirements of the board concerning the formal requisites of each bid, and the precision and certainty with which each bidder should state the terms upon which he proposed to perform each of the items of work enumerated in the specifications, and in the estimate of the city engineer, which were attached by copy, to each of the printed forms heretofore referred to. The relator's bid was submitted upon a printed form supplied to him for the purpose, and in which appeared both the requirements of the board as to the manner of bidding, the specifications and the estimate of the engineer. Amongst the requirements as to bids the following appeared in italics: "Bidders are warned that all bids which are deficient in either of the following requirements may be rejected as informal."

"(c). Bids must be made on every item not erased from the printed proposal bound herewith."

Amongst the items upon which the engineer had given an estimate was one for the resetting of curbs; this shows plainly that resetting was contemplated as part of the work; upon the printed proposal there appeared an item for resetting curbs, and this

item was left blank by the relator. Kirchner & Folz, bidders, to whom this contract was awarded bid upon each item submitted in the proposal; the total of the relator's bid, not including the item for reset- ting curb, was lower than the total of Kirchner & Folz' bid which included the resetting item, and Kirchner & Folz were in turn lower in figures than any of the other bidders. The estimate of the engineer as to the amount of curb resetting likely to be done, placed it at but forty lineal feet, the bid of Kirchner & Folz upon this item was fifteen cents per lineal foot, so that the item left blank by the relator was bid upon by K. & F. @ fifteen cents per foot; and computing the total cost of this item as based upon the engineer's estimate, it would be found to be but $6.00, while the difference between the grand total of the bids of Kirchner & Folz, and Eberhardt, both being com- puted upon the estimate, was $174.50. After some discussion, the board awarded the contract to K. & F., whereupon on the next day the relator addressed it a written communication, wherein he stated: "I inten- tionally omitted to make a figure for the resetting of curb, as my pur- pose was to do that part of the work, if there should be any, without charge, as in any event it would be only a nominal expense to me." But did he indicate in his bid that he intended to do this work for noth- ing? It is worthy of comment, as bearing upon this proposition, to note that in his bidding upon items, whenever he bid even dollars he was particular to, and did draw a pen line through the blanks placed for cents, and whenever he bid less than a dollar upon an item, and bid only cents thereon, he drew a pen line through the space placed for dollars; sav- ing the blanks placed for the item of resetting, and here is neither figure, word nor pen line; nothing to indicate what he intended as to this item. So the board was justified in concluding that he had not indicated what he proposed to reset curbs for; they could not say from his bid whether he proposed to do it for nothing, for a cent a foot, or $40.00 a foot. His coun- sel urges that failure to fill the blank was a bid to do for nothing and with- out charge the item so left blank. If this argument be sound as to one kind of item, it is sound as to another kind; if it be sound as to items that cost little, it must be sound as to items that cost much; if sound when one item is left blank, it is equally sound when two or three or *all* items are left blank. If the relator had left every item blank, I surmise that there would be some difficulty in convincing him that he thereby obligated him- self to do the *entire* work for nothing; and yet this conclusion follows from the proposition urged by counsel.

The effect of the relator's failure to fill the blank, his failure to make any indication as to this item, was that he did not bid at all upon this item; in the respect of curb resetting there was no bid by him, and in this failure "to bid upon an item not erased from the printed proposal," he made his bid deficient in such a requirement as made it liable to rejection by the board, as informal. It can not cure the defect to subsequently say that he would supply this item without cost; such a proposition was substantially a *new* bid by the relator. If the board could thus be put to the necessity of considering his amended proposition, it must in like manner be under the necessity of entertaining and considering amended propositions from others as well as from Eberhardt, would be put to the necessity of consid- ering new propositions, in fact, new bids from each original bidder who saw fit to change or amend his bid, or from any other person or firm, whether original bidders or not.

If the board is to be put to the necessity of entertaining relator's at- tempted explanation of his bid, of adopting a construction of his bid that he is disposed to give to it not appearing from its face, this, in effect, gives relator the opportunity of submitting a bid uncertain and

indefinite in itself, of ascertaining the amounts of the other bids and then of changing the uncertain feature of his bid into certainty in a way that makes his bid the lowest after his explanation of it, though, in fact, it was no bid at all before he explained it.

It is suggested that, being to the public interest that the work should be done at the least possible cost, relator should be awarded the contract, his proposition, as amended by his letter, being the lowest. While this proposition should always be borne in mind and given effect when practicable so to do, yet it can not be said to be the controlling principle in the case. If a third one of the original bidders had submitted a new bid immediately after the contract had been awarded to K. & F., in terms much lower than any submitted bid, it could not be maintained that such bidder would have been entitled to the contract, and yet the public interest would be subserved by granting it to him on account of the decreased cost.

The conclusion of the court is, that by failing to fill the blank left for the item of resetting curbs, the relator altogether and entirely neglected to bid upon this item, which item was one required by the board to be bid upon ; in failing to bid upon this item, the relator failed to comply with the lawful requirements of the board as to bidding, in a respect which made his bid so informal as that the board was justified in rejecting in altogether.

It is proper to here observe that there is a broad distinction between the questions of the *power* of the board to accept an amended informal bid if it sees fit to exercise a discretion and so do, and its duty to accept it. The only *mandatory* duty that is upon the board, is that of awarding the contract to the *lowest responsible bidder* ; and in this sense no one is a *bidder* who has not complied with all the reasonable requirements of the board as to the manner and mode of bidding. The relator not having complied with the necessary requirements, was not strictly a bidder ; therefore as to him the board was under no mandatory duty of awarding him the contract. Whether they might legally have done so if they saw fit, is another question not now determined.

The writ is refused.

*Jos. W. O'Hara*, for the Relator.

*Fred. Hertenstein, Corporation Counsel, contra.*